**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE DA CAMARA, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| POSHMARK, INC., MANISH CHANDRA, NAVIN CHADDHA, EBONY BECKWITH, JEFF EPSTEIN, JENNY MING, HANS TUNG, and SERENA J. WILLIAMS, | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Suzanne Da Camara ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Poshmark, Inc. ("Poshmark" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Naver Corporation ("Parent") through merger vehicles Proton Parent, Inc. and Proton Merger Sub, Inc. ("Merger Subs") (collectively with "Parent", "Naver") as a result of

- 1 -
COMPLAINT

an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a October 4, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").

3.     Under the terms of the Merger Agreement, Naver will acquire all of the remaining outstanding shares of Poshmark's common stock at a price of $17.90 per share in cash. As a result, Poshmark will become an indirect wholly-owned subsidiary of Naver. On November 15, 2022, Poshmark filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.     The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.

5.     The Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Poshmark, provided by Poshmark management to the Board and the Board's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs, if any, and provide to the Company and the Board.

6.     This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7.     Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been a Poshmark stockholder.

8.     Defendant Poshmark is a leading social marketplace for new and secondhand style for women, men, kids, pets, home and more. Poshmark is incorporated under the laws of the State

COMPLAINT

of Delaware and has its principal place of business at 203 Redwood Shores Parkway, 8th Floor Redwood City, California 94065.

9. Defendant Manish Chandra ("Chandra") has been a Director of the Company at all relevant times.

10. Defendant Navin Chaddha ("Chaddha") has been a director of the Company at all relevant times.

11. Defendant Ebony Beckwith ("Beckwith") has been a director of the Company at all relevant times.

12. Defendant Jeff Epstein ("Epstein") has been a director of the Company at all relevant times.

13. Defendant Jenny Ming ("Ming") has been a director of the Company at all relevant times.

14. Defendant Hans Tung ("Tung") has been a director of the Company at all relevant times.

15. Defendant Serena J. Williams ("Williams") has been a director of the Company at all relevant times.

16. Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Poshmark maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20.    Poshmark is a leading social marketplace for new and secondhand style for women, men, kids, pets, home and more. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.

21.    On the August 11, 2022, the Company released a  press release announcing its 2022 Q2 financial results, the Company highlighted such milestones as a revenue increase of 9% Year-over-Year to $89.1 million and an 8% increase in merchandise value. Speaking on these positive results, CEO Defendant Chandra commented on the Company's positive financial results as follows, "We reported a strong quarter despite a tough consumer environment due to our focus on execution and are pleased that our results exceeded our initial expectations."

22.    Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Poshmark to enter into the Proposed Transaction without providing requisite information to Poshmark stockholders such as Plaintiff.

*The Proposed Transaction*

23.    On October 4, 2022, Poshmark and Naver issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SEONGNAM-Si, South Korea and REDWOOD CITY, Calif., October 3, 2022** –
> Naver Corp. (KRX: 035420) ("Naver"), Korea's largest internet company, and Poshmark,
> Inc. (NASDAQ: POSH) ("Poshmark"), a leading social e-commerce marketplace for new
> and secondhand style, today announced that they have entered into a definitive agreement
> under which Naver will acquire all of the issued and outstanding shares of Poshmark for
> $17.90 in cash, representing an enterprise value of approximately $1.2 billion.[1] This

- 4 -
COMPLAINT

represents a premium of 15% to Poshmark's closing stock price as of October 3, 2022, a 34% premium to the 30-day volume weighted average price, and a 48% premium to the 90-day volume weighted average price of Poshmark's shares.

**Management Commentary**

Choi Soo-Yeon, Chief Executive Officer of Naver:

"The combination will create the strongest platform for powering communities and re-fashioning commerce. Poshmark is the definitive brand for fashion in the United States that provides a social network for buying and selling apparel. Naver's leading technology in search, AI recommendation and e-commerce tools will help power the next phase of Poshmark's global growth."

"Poshmark is a natural fit for our business – our two companies share a common set of values and vision around content, community and empowerment. Bringing Naver and Poshmark together will immediately put us at the forefront of creating a new, socially responsible, and sustainable shopping experience designed around sellers of all sizes and interests – from individual and influencer sellers to professional sellers, brands and specialty boutiques – and a large, loyal, and highly engaged social community. We are excited to work closely with Manish and his talented team to create lasting value for all our stakeholders."

Manish Chandra, Founder and Chief Executive Officer of Poshmark:

"The opportunity to join forces with Naver – one of the world's leading and most innovative and successful internet companies – is a testament to the strength of our brand, operating model, and what we've built over the last decade with our talented team and amazing community. Our industry continues to evolve at a rapid pace, and we are excited to continue to lead the future of shopping by providing our community with an unparalleled experience that is simple, social, fun and sustainable."

"This is a highly compelling opportunity for our employees, who will benefit from being part of a larger, global organization with shared values and complementary strengths. This transaction also delivers significant and immediate value to our shareholders. Longer term, as part of Naver, we will benefit from their financial resources, significant technology capabilities, and leading presence across Asia to expand our platform, elevate our product and user experiences, and enter new and large markets. I look forward to partnering with Naver as we take our company into its next phase of growth."

**Redefining Commerce and Community Around a Shared Vision**

The inherent strengths of both companies lie in their unwavering commitment to content, community and empowerment:

> **Content.** Naver is home to the largest number of bloggers in Korea and the largest number of digital creators of stories (Wattpad) and comics (Webtoons) globally. Poshmark is a leader in creating unique styles and fashion trends, including the growing K-Fashion apparel segment.

> **Community.** Naver is the largest and longest-standing online community in Korea, where more than 36 million monthly users access its search portal and various online community services. Its metaverse platform, Zepeto, is the second largest metaverse app in the world, with

COMPLAINT

a growing, vibrant community for members to create and share whatever they imagine. Naver's community also extends to other large, fast-growing, and highly engaged groups, including its K-Pop fandom community Weverse, which is jointly owned with BTS' management company, one of the most successful groups of all time. Poshmark is the destination of choice for more than 80 million registered users. Among them, active users spend approximately 25 minutes of their day buying and selling apparel online, and gather in-person at Posh Party Live events held in various cities around the world.

**Empowerment.** Naver is dedicated to empowering the long tail – it is the largest enabler of e-commerce for small and medium-sized businesses in Korea and has revolutionized content creation by democratizing the publication of digital comics through Naver Webtoons. At Poshmark, anyone can easily list and sell what is hanging in their closet at home, and anyone can make a social impact through the promotion of socially responsible, sustainable commerce.

The transaction will create a global player in online fashion re-commerce by combining Poshmark's unique discovery-based social shopping platform and deeply engaged community with Naver's technological prowess in upleveling the e-commerce experience. Poshmark will also leverage Naver's proven expertise and track record in Asia and its significant expertise from backing and investing in other fashion and consumer-to-consumer (C2C) e-commerce platforms globally.

The combination accelerates Naver's strategy to build a global e-commerce community portfolio to capture the growth in large markets around the world, including Poshmark's home market of North America. Together, the companies expect to increase purchase conversion rates, deepen user engagement, create an industry leader in livestreaming commerce, and enhance the unique relationship- and discovery-based experiences that are driving fast-growing re-commerce verticals.

## *The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

24.     On November 15, 2022, the Poshmark Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

25.    Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Adequate disclosure as to why no majority-of-minority rights were included in the transaction;

    b.  Adequate disclosure as to the powers of the Transaction Committee, specifically whether the committee was empowered to veto a transaction not in the best interest of shareholders;

    c.  Adequate disclosure as to why the Transaction Committee was no comprised solely of disinterested directors;

    d.  Whether the confidentiality agreements entered into by the Company with Naver differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

    e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Naver, would fall away; and

    f.  Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Poshmark's Financial Projections*

26.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Poshmark provided by Poshmark management to the Board and Goldman Sachs and relied upon by Goldman Sachs in its analyses.  The Preliminary Proxy Statement

discloses management-prepared financial projections for the Company which are materially misleading.

27.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed, "certain internal financial analyses and forecasts for the Company, including assumed probabilities associated with certain future events contemplated by such forecasts and certain analyses related to the expected utilization by the Company" prepared by Company management.

28.    The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Poshmark management provided to the Board and Goldman Sachs.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

29.    With regard to the *Certain Financial Projections* prepared by Poshmark, the Preliminary Proxy Statement fails to disclose material line items, including the following:

   a.  A definition for Adjusted EBITDA as well as all underlying inputs, metrics, and assumptions used to calculate the metric; and

   b.  A definition for Unlevered Free Cash Flow as well as any underlying inputs, metrics, and assumptions used to calculate the metric.

30.    This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

31.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Goldman Sachs's financial analyses, or make an informed decision whether to vote in favor of the Proposed

Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

32.    In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

33.    With respect to the *Illustrative Present Value of Future Share Price Analyses*, the Preliminary Proxy Statement fails to disclose:

      a.  The inputs, metrics, and assumptions used to determine an EV/NTM revenue multiple range of 1.5x to 3.0x;

      b.  The inputs, metrics, and assumptions used to determine an EV/NTM gross profit multiple range of 1.75x to 3.50x;

      c.  The amount of Poshmark's projected debt as of December 31, 2023, 2024 and 2025 respectively;

      d.  The amount of Poshmark's projected cash as of December 31, 2023, 2024 and 2025;

      e.  The value of funds payable to customers and the Suede One earnout estimate;

      f.  The inputs, metrics, and assumptions used to determine an illustrative discount rate of 15.0%;

      g.  The Company's estimated cost of equity; and

      h.  The beta for the Company.

34.    With respect to the *Illustrative Discounted Cash Flow Analysis—Aggregate Cash Flows*, the Preliminary Proxy Statement fails to disclose:

      a.  The inputs, metrics, and assumptions used to determine discount rates ranging

COMPLAINT

from 12.5% to 15.0%;

   b.   The Company's weighted average cost of capital;

   c.   The range of illustrative terminal values for Poshmark;

   d.   The inputs, metrics, and assumptions used to determine perpetuity growth rates ranging from 2.0% to 4.0%

   e.   The inputs, metrics, and assumptions used to determine implied exit terminal year EV/revenue multiples ranging from 1.1x to 1.8x;

   f.   Poshmark's target capital structure weightings;

   g.   The Company's cost of long-term debt;

   h.   The after-tax yield on permanent excess cash;

   i.   The future applicable marginal cash tax rate for the Company;

   j.   The beta for the Company;

   k.   The assumed rate of inflation;

   l.   The range of illustrative equity values derived for the Company; and

   m.  The number of fully diluted outstanding shares of Company stock.

35.   With respect to the *Premia Analysis*, the Preliminary Proxy Statement fails to disclose:

   a.   The value of each transaction compared;

   b.   The specific date on which each transaction closed; and

   c.   The inputs, metrics, and assumptions used to determine a reference range of illustrative premiums of 23% to 50%.

36.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

COMPLAINT

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

37. Plaintiff repeats all previous allegations as if set forth in full herein.

38. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

39. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

40. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

41. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

42. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

43. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

44. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

45. Plaintiff repeats all previous allegations as if set forth in full herein.

46. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

47. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The

Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

48.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Poshmark' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

49.     The Individual Defendants acted as controlling persons of Poshmark within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Poshmark to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Poshmark and all of its employees.  As alleged above, Poshmark is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and

that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: November 22, 2022                    **BRODSKY & SMITH**

                                       By:   */s/ Evan J. Smith*
                                             Evan J. Smith, Esquire (SBN 242352)
                                             esmith@brodskysmith.com
                                             Ryan P. Cardona, Esquire (SBN 302113)
                                             rcardona@brodskysmith.com
                                             9595 Wilshire Blvd., Ste. 900
                                             Phone: (877) 534-2590
                                             Facsimile (310) 247-0160

                                             *Attorneys for Plaintiff*

**OF COUNSEL**

Douglas Risen
Risen Law, LLC
1900 JFK Blvd., Suite 910
Philadelphia, PA 19103
Phone: 215.201.2824
drisen@comcast.net

- 14 -
COMPLAINT